Hear ye, hear ye. This Honorable Appellate Court for the Second District is now back in session. The Honorable Justice Robert D. McLaren presiding. Your Honors, the second case on the docket this morning is number 2240399, Milton Reynolds, Plaintiff Appellant v. State Farm Life Insurance Company et al., Defendants, Abilese. Arguing for the Appellant, Robert Shapiro. Arguing for the Abilese, Sean Weaver. Mr. Shapiro, you may proceed. Good morning, Your Honors. Good morning. Good morning. May it please the Court, I'm Robert Shapiro and our firm represents Plaintiff Appellant Milton Reynolds. Mr. Reynolds brought this action individually and on behalf of similarly situated individuals claiming that the defendants, State Farm, used their protected genetic information for underwriting purposes in violation of the Illinois Genetic Information Privacy Act that we'll be calling GIPA today. GIPA's Section 20 prohibits an insurer from using protected genetic information for an underwriting purpose. The protected genetic information here is the genetic information that the State Farm Life Insurance applicant provided to a third-party health information entity that was transmitted to State Farm, which then used it for underwriting. The sole question on this appeal to be decided de novo by this Court is whether Section 20B of GIPA applies to life insurance, life insurers. Now when we look at, I mean, you said the primary issue is 20B. In looking at 20B itself, don't we have to look around 20B as well in order to put the pieces of the puzzle together? Certainly, and the pieces of the puzzle around 20B, namely 20A and 20C, give even more credence to our argument today, which is that 20B, the first line of 20B, the opening line is, an insurer shall not use or disclose protected health information that is genetic information for underwriting purposes. The definition of insurer in GIPA in Section 10 is an entity that is subject to the jurisdiction of the Director of Insurance and a managed care plan. The Director of Insurance regulates all companies in the insurance business. So the answer to your question is, in 20A and 20C, the legislature specifically decided to limit those two sections that also deal with the use of genetic information, not in underwriting, but in other aspects of insurance. Those two sections are specifically limited. What did State Farm ask of your client that constituted genetic information? State Farm isn't getting the medical records or the genetic tests that's an interview with your client. That's not genetic information, is it? Well, there's both medical history and they also took a blood. They did take blood tests and give information from the blood tests. They didn't share that information with any other persons or entities, did they? There's no allegation of that, is there? The allegation is that they used the information which they shouldn't have used in underwriting because Section 20B requires that they not use it unless it falls within. The statute was amended to come in line with HIPAA, correct? The statute was amended to certain things to HIPAA in 2014, including 20B. There's no quarrel about it. HIPAA refers to health insurance and health information, right? But that, again, makes our point. HIPAA and 20B, in the HIPAA version of 20B, they make it limited to health insurance. In this instance, 20B, the Illinois legislature changed the word health to insurer. The legislature could have easily said, and a health insurer shall not use or disclose information. But they didn't. And they know that it's not limited to insurer because 20— Well, you can ask the question. I'll go ahead and finish your answer. No, because in the end of 20B, the legislature specifically excluded long-term care insurers with an exception for nursing home. But in putting an exclusion to the broad general term insurer that includes all insurers, including life insurers, they said, but just so you know, this Section B does not apply to long-term care insurers. Under statutory construction, if you want it not to apply to life insurers, you have to say that there because if you're making exclusions, you have to—the failure to exclude. We've read your briefs, and I know we all have questions. Right, okay. And one of my questions is, I looked at secondary authority, a couple of them, to disagree with your argument. And also, there's two federal district court cases since the trial court dismissed a plaintiff's complaint that have disagreed with your analysis and dismissed those complaints. That is true, but— That's Thompson v. Banner Life Insurance, 2024 Westlaw 3650096, and Thompson v. Prudential Health Insurance of America. Now, you didn't address defendants' reliance on those cases in your reply brief. Do you want to address it now? Yes. Why should we not find those cases persuasive? Because both those cases rely on the finding that because 20A and 20C— the legislature must have meant that 20B was also, but that's an incorrect statutory interpretation. And one, I think, Banner Life also said that it's just— it can't be that health insurers can't use genetic information. That's what the legislature wrote there. What is the genetic information that they were using? A blood test is historically not genetic information. If the blood test shows some genetic condition, it's genetic information. If the family history has family medical history, not your medical records or not, but if you say my father had MS or whatever it is, that's giving genetic information, and HIPAA defines that as genetic information, and GIPAA does as well. But this case today is not whether—we're taking the facts, flooding the complaint, it's true. This is a motion to dismiss. So we've alleged that they took the genetic information, and we've alleged what genetic information they took. We're deciding here whether what State Farm is saying is that no life insurer is covered under Section 20. The other problem with that argument is in Section 20, 20E, which came in 2019, the legislature made an exception for certain genetic testing entities that could disclose the information to health and life insurers. Why would the legislature ever mention life insurers if the Thompson cases were correct or the circuit court here were correct and life insurance weren't included anywhere in 20E in Section 20? Why would they be in 20E suddenly mentioning life insurers? What about the long delay in bringing these cases that have been filed now in various jurisdictions? That's another argument in one of the Thompson cases. Is that relevant? That's completely irrelevant. But it was on the books for nine years.  And BIPPA was on the books for 15 years. The original statute passed in 1997. 1998, yeah. It was filed in 1997, passed in 1998. But it didn't have Section 20B, so we're talking about— Right, but it was clear from the legislative history then that life insurance was not included. No. I know you disagree with that. No, I don't disagree with that because guess what? In Section—I totally agree with you. The reason the legislative history shows that life insurance wasn't included in Section 20 at that time was because it wasn't included. It was only A and what was then B, which now is C, and it said health and accident. So in Section 20, life insurance doesn't get included until 20B comes in and the legislature chooses to use the term insurer, not the term health insurer, not the term health policy. They said an insurer. Why is State Farm wrong when they say that this provision—that they are an insurer, but these provisions exclude life insurance because of the catch-all phrase? Okay. The catch-all phrase, which I've gone through most of the other arguments, that's all State Farm has, and we can talk about the catch-all phrase. If a catch-all phrase—and I'll explain since we have other people in. The catch-all phrase is that— I know in the trial court you said because the word any was not used that it does not cover life insurance, right? The trial court said that it's not in the definite. The trial court said that only managed care plans are covered by GPA, and State Farm doesn't agree with that and none of the other courts agreed with that, but that's what he said in the argument. It's not in his written opinion, but that argument, I don't think State Farm is going to try to defend that. But I do want to talk about the catch-all. In subpart four, there is a phrase and other underwriting activity— underwriting is not there, it just says other activities that are contracted to health, basically to health insurance. So our position is given 20A and 20C, given the term insurer, you can't limit all of Section 20B just to health by having a subpart catch-all phrase. And it's this doctrine called reverse egesdem generis, which State Farm wants this court to apply. No Illinois appellate court or the Illinois Supreme Court has ever applied the reverse egesdem generis doctrine that we could find. In addition, State Farm says, well, it's a list and nothing in the list has to do with life insurers. If you start with subpart one and subpart two, which are removed from subpart four because they're in separate subparts, they're also removed because subpart one talks about eligibility determinations. Eligibility determinations are made by life insurance and health insurance. Subpart two talks about computation of premiums. Computation of premiums are made by health insurers and life insurers. Those two subparts that are removed clearly constitute activities that health and life insurers do it. And to then use subpart four, subpart four is probably the other underwriting activities are limited to health, but it shouldn't be joined in. Like I have a case older than Paul's graph, which is the U.S. versus Palmer in 1818, which we cite in our brief. And that case looked at exactly this issue and said in statutory construction there is reverse egesdem generis, but you can't apply it when it just doesn't make sense with the rest of the sentence. Well, both sides here are arguing that the language of 20B is the whole section is nonambiguous. One of the, I mentioned secondary sources. I'm reading from, this is a genetic privacy, Security and Privacy, a Guide for Federal and State Law and Compliance, Section 3393. And I'm reading directly from this article. An insurer may not seek information derived from genetic testing for use in conjunction with the policy of accident and health insurance, citing this particular section. Right, that would be to 20A. That wouldn't be 20B. You're saying that they missed 20B? No, no, 20B was adopted later, and they chose not to use the limitation. It's that expressio. We say it in our brief. It goes on for like 20 Latin words. But if you put a limitation in Section A and Section C, if it's not in Section B, it doesn't, you can't interpret it. The statutory interpretation conclusion is that the legislature did not intend to include that limitation in the section they didn't put it in because they knew how to put it in the other two. And there's a Supreme Court precedent that allows us, in terms of whether or not we read the statute as a harmonious provision, we look at the entire statute. And we can look to those last phrases to decide whether or not and what that provision applies to. And it says any other. Oh, the subpart four, yeah. Yeah, other. Other activities related to the creation, renewal, replacement, or of a contract of health insurance or health benefits. Right, but statutory interpretation again. Yes, there is reverse egeism denarius, and you could try to leap up to those other items that are in a separate subpart. But more importantly, if the legislature wanted to exclude life insurance, they wrote it doesn't apply, Section B doesn't apply to long-term care insurance. Why not just say long-term care and life insurance? The trial court chalked it up to sloppy work by the General Assembly, the court said. It's not a perfect statute, I get that. The history of Illinois legislation is replete with examples of things done in a hurry and where they haven't been properly developed any legislative history. We face that problem here, right? I'm sure the statute isn't perfectly drafted, but it is clear enough in Section 20B what it prohibits and who it prohibits from doing it. It prohibits insurers, except for long-term care insurers, and maybe except as to what underwriting purposes can't be used. It says it can be used for eligibility, it does apply to eligibility determination, it does apply to computation of premium. Now, and then there's the 20E problem, which also helps make clear that the legislature understood that 20B applied to 20E. What State Farm says is, oh, well, 20E can't apply to 20B because 20B prohibits the use of genetic information, and 20E has an exception for consent. That's exactly right, there's an exception for consent in 20E. So the issue here is compliance. GPPA is a compliance statute, and on this issue we're just asking that this issue, and if you read the statute, I agree with you as a whole, that's how you want to read it. And look at it, there's just, other than the other line, which takes a lot of gymnastics to get it to erase everything else that's there. It's also a beautiful flower. Right. You know, and the consent in 20E, there's also in HIPAA, which is part of, HIPAA adopts HIPAA, in 20E, HIPAA allows certain written authorization and consent. It's not, it's not, what we're saying in our complaint, and here, is that the life insurers have to comply with HIPAA the same way that the Illinois Supreme Court said, BIPPA's not a perfect statute, people are not, the employers were not happy with BIPPA, but that's the statute. The vote rang a while ago. Oh, I didn't see it. I was so excited I didn't miss it. It's okay. I have a question.  This is a class action, is it not? It's a complaint for a class action. Or at least it was an attempt at a class action. Yeah. What relief were you seeking? There's seeking, you know, to- A change in the information or the application as opposed to a compensatory reward to the entire class? There is, there's damages for the violations, I believe, under HIPAA. But also, they're seeking to, the purpose of seeking damages is to force the life insurers, in this case, to comply with the statute. Or, you know, there's other proposals to try to change the statute. The statute, the legislature has made the decision between balancing privacy and the interest of life insurers and other insurers in using genetic information. Would you characterize this violation as procedural? In the sense that they were doing things, procedures, that you don't think they were authorized to do? What they weren't authorized to do is, subject to the consent aside, which is not in the case at this stage, the issue is, did they use prohibited, protected health information or genetic information? And what is the nature of the injury? How do you quantify this injury? It's a statutory violation and whatever the statute has. I don't think they're seeking actual injury per se, but like BIPA and GIPA and HIPAA, for violating the terms of those privacy acts, there's damages that are provided. Are they consistent throughout the class or across the class? Because it wouldn't seem reasonable to suggest that there are people to whom this information might be damning. And there might be people who this has no effect on their eligibility for anything. So how do you determine, in a class action, are you going to throw a dart at a board and see whether it hits a triple? Getting far afield, but genetic information that helps your application, there's other exceptions, like there's consent exceptions. Part of consent is there's other parts of GIPA, GINA, and HIPAA that would allow positive information to be used. What the point, GIPA, sorry, was passed because there was a concern that there was a lot of genetic testing going on. And that the consumers of the genetic testing or patients of genetic testing should control their private information. Sir, I think you've answered my questions. Are there any other questions? No, thank you. Thank you. You'll have an opportunity to make rebuttal. Mr. Weber or is it Weber? It is Weber. Thank you. You may proceed. Thank you. May it please the court, counsel, your honors, good morning. Good morning. Sean Weber from Winston and Strachan on behalf of the State Farm Defendants, the Appleys, in this appeal. Your honors, we ask that this court affirm the trial court's dismissal of plaintiff's first amended complaint. And State Farm's position in this appeal is simple. GIPA's Section 20B underwriting restrictions apply only to health insurance underwriting and not to life insurance underwriting. And we present this court with what I'll call three buckets of tools to assess State Farm's position. And frankly, the parties- Sir, could you speak up a little louder? I'm not sure you can be easily heard. Or up higher? Maybe it doesn't go up any higher. No. Okay. No, don't do that. It's not devised for higher education. I will lean in. I'll lean in here a little bit more. We don't want you to have to go to the chiropractor after this. Can I ask a quick question? You make a policy argument as well as the impact that these cases have been filed in various jurisdictions that will have on life insurance. Why is that relevant for our consideration? We don't write the law. We don't make the law. We interpret the law. Correct. So two aspects, I think, go to the policy, some of which were presented through the amicus, through the American Council of Life Insurance. And they've put some facts in their brief that I don't think anyone is quibbled with, certainly on the plaintiff's side. But I think it frames the policy arguments, just for example. So life insurance in this state, okay, there's about 250 members of ACLI that are underwriting policies, life insurance policies in this state, so much so that approximately on an annual basis almost $10 billion, with a B, is being paid out under life insurance for Illinois citizens. Here they also just posit just very simply, and I don't think anyone is quibbled with this either, that premiums for life insurance vary with the risk that is presented by the potential insured. And this is a policy that has existed not for one year, not for 10 years, not for 50 years. This concept has existed in Illinois life insurance underwriting for over 100 years. And the policy arguments that stem from that, Justice Burkett, are as follows. If it really is true, if we just assume for present purposes that plaintiff's position is the correct position, the correct interpretation, and Illinois, by the way, if the court were to do this or adopt plaintiff's position, Illinois would be the first and only state in the union to have taken such draconian underwriting restrictions and applied them to the life insurance industry. And our policy position is quite simply that we don't have to set aside the common sense realities here, that that clearly could not have occurred without a single word spoken in the legislative history or without an ink, a drop of ink, having been written on that. And I think importantly, again, this court can consider, and I think we should, the import of life insurance on families in this state. So for example, ACLI has posited into the record that there are currently about 6 million individual life insurance policies underwritten in this state. So if you just take the raw beneficiary of those policies plus just one additional beneficiary, okay, not great at math, but I am here at the university today, 6 times 2, that would be 12 million people that would be directly impacted. And the state of Illinois' population is not even 13 million. Counsel, in your experience, I assume you have experience in this area of the law based upon your brief. Would you say that there are instances where life insurance and health insurance are commingled in a particular statute? So I won't purport to be an insurance expert. I think we could just use GIPA for example. There is, which I think deals almost largely, almost universally with health insurance underwriting. There's one mention of the word life insurance that comes in 2019 that counsel talked about. So I guess the statute itself does mention life insurance once. So we could use GIPA as an example, I think, in which just the plain phrase is used in the same statute. But I don't believe that that has anything to do with the underwriting restrictions. That was the 2019 amendment that uses the word life insurance that counsel mentioned. It restricts an entirely different group, which is third party providers of genetic testing. So the most popular for this court and the audience would be the 23andMe type entities that conduct genetic testing. That restriction is just simply that there's a consent mechanism that they can send it, that you need to have consent before sending it to a health insurer or a life insurer. But if you actually look at the language in Section 20E, it's restricting those third party providers, not life insurers or health insurers across the board. So it's a straw man argument in that position. But I do think that, and Jessica, you had raised, it's sort of an odd position that both sides are taking the position that Section 20B can be ruled on clear as day on its face. I think we've got the better of the positions. But I think if we look at just the plain language argument, and I think we should start there, just frankly because the Illinois Supreme Court tells us that we have to start there when conducting statutory interpretation. And so let's just start just by the plain text. Again, I'm not trying to oversimplify, but it's worth saying that our position is that the text of 20B indicates that all of 20B is limited to health insurance. Now, there are some significant indicators. I can say that all I want, but there are some significant indicators that I think this court can rely on in support of that position. Let's just look at the, again, looking at the plain language. 20B is absolutely riddled with terms that are unique to health insurance. Unique, totally unique. The terms deductibles, cost-sharing mechanisms, wellness programs, determination of medical appropriateness have literally nothing to do with life insurance and are not terms that are used in life insurance. They are solely used for health insurance underwriting. And as this court has already raised, what about that phrase between subsection 3 and subsection 4 and other? It reads, and other activities related to the creation, renewal, and replacement of a contract of what? Health insurance or health benefits? And you heard counsel talk about that. Well, it's a disjointed phrase. You have to look at that subsection 4, subsection 1 and 2 or above. I measured it this morning. So it's literally one sentence. The underwriting restrictions provision is one sentence. It's about four inches, and it's separated by semicolons, just as statutes routinely are. And it's one sentence, and it encapsules the entire underwriting restrictions. But as we've also set forth, very importantly, you also heard today from counsel that we're not supporting this court with case law or that somehow you'll be the first to do something if you interpret it in that way. Counsel, is insurance law a segment of the law relating to contracts? Is insurance law essentially a contract, like Lloyd's of London without the coffee? For present purposes, I'll adopt it, yes. Insurance, generally speaking, is a contract between a carrier and an insurer. Well, the place I'm going is, if it is, then is this nothing more than an interpretation of a contract or a statute based upon how contracts are supposed to be entered into? Well, I'll answer it this way, and maybe it's unsatisfying. You can qualify it if you want. That's what I'm looking for. Yeah, I mean, so one, I don't think so. One, they're not bringing a contract argument. They're bringing a specific Section 20B statutory claim, which Your Honor had raised. It comes with actual damages, and these aren't small. It's $2,500 to $15,000 per incident. You've heard the numbers of policies, okay? It's significant. We're talking billions in damages from this theory, not dollars. We're talking billions. So I don't think that it's, I think we should just interpret it and stay strictly within the confines of interpreting a statute. To the extent that that deviates from interpreting a contract, I don't know if that's the case, but I think we can just use the tenets that the Illinois Supreme Court and the law that we supplied give you for the syntax. In the syntax cases, again, you heard counsel saying you might be the first to do something, and I think that's absolutely a bridge too far. Our briefs are riddled. Our briefs are riddled with case law in support of this interpretation of how it is that the underwriting restrictions apply only to health insurance. That we imply, we give the Illinois, we have Illinois Appellate Court cases, including a case from this court, the Briscato case. We have Federal Circuit Court cases. We have U.S. Supreme Court cases, and they all stand for just, it's a very common interpretation. Counsel just talking about a lot of Latin terms. You can check the brief. I did this morning just to make sure I wouldn't mistake. We don't use any Latin terms. We've never ascribed a certain canon of construction. We are presenting a very, very simple, synthesized rule through the case law, which stands for the proposition that when a statute has a list of specific items that concludes with a catch-all set of items, like we have here, the one, the two, the three, and the four, that the preceding item should be construed to fall within the catch-all set of items. That is not a, oh my gosh, gotcha moment under Illinois law. That's not a gotcha moment over Federal law. We've given State and Federal law to suggest that that is a very, very common interpretation. But even if, even if, just for sake of argument, that this court wants to go a little bit beyond just plain language, because you've heard arguments in both positions, legislative history is very, very, very important in this particular case. And we know, plaintiff concedes in his briefs, and it has here again today, that GIPA, as originally acted in 98, does not apply to life insurance. Now, it's very important to understand why it is that they concede, but it's more important to understand why it is that they must concede that point. So State Farm has paid my firm, and we went and looked and went through the process to look at the legislative history. And legislative history and the Illinois law that we supply surrounding legislative history tells this court that legislative history and the debates are valuable construction aids when conducting a statutory construction analysis, including remarks of the bill's sponsors, and those made right prior to passage of the bill are particularly important. So we went back and looked. In 1997, leading up to the 1998 vote, what did the House sponsors say? At the third reading, third reading, as you're sure you're aware, is before the final vote. House sponsor says, quote, GIPA does not include life insurance. Our objective was to make sure there is no discrimination in health insurance. And then went on to say life insurance is not included in this. And then as it relates to a question, it says, as a question surrounding DNA sampling, the House sponsor again reiterates that this does not apply to life insurance. But on the Senate side, maybe even more importantly, the Senate sponsor noted that there had been objections by the life insurance industry as it related to the scope of GIPA. And they even used an example, such that someone could be tested and find out that they have a long-term health problem and run out and purchase insurance without disclosing that information to a potential carrier. In response to that question and that concern, the state sponsor says, we have removed life insurance from this bill. And most importantly, they have removed life insurance from this bill because the life insurance lobbyists had objected to it. That was Representative Moffitt. Representative Moffitt is on the House. The quote that I just stated, I just said it was from Senator Hawkinson. Well, you know, we talk about best practices in the law. What's a best practice? And unfortunately, the legislature doesn't understand that term, I think. But what prevented them from putting into this statutory language, this does not apply to life insurance. What prevented them? Yes. Nothing. But it was not needed, Your Honor. But they didn't do it. They didn't need to do it because the amendment in 2014 got them just there under the same framework that was there in 1998. And what do I mean by that? So Plaintiff's argument is, and it comes that Section 20B does not come into existence until 2014. So let's look at what happened in 2014. And again, we don't have to guess. This is not me ruminating about it. We know exactly. The General Assembly tells us that Section 20B went into law in 2014 to align GIPA with HIPAA, a HIPAA proclamation that had occurred in 2013. And again, we don't have to guess. Legislative history. The state sponsor in the 2014 bill said quite clearly they were updating this law as it relates to disclosure of genetic information of PHI according to HIPAA. And they even went as far to update the legislative findings and intent section of the bill to say that we're amending this to make it in accordance with HIPAA. And our position is very simple. It cannot be. It does not. I've read it. We are familiar with the argument in the briefs. Counsel's position, Plaintiff's counsel, is that that doesn't matter. The General Assembly should have included life insurance as an exclusion from this section just to make it clear. I know your argument is that the bottom line is the issue is whether or not life insurance is subject to 20B's underwriting purposes restrictions. I think they have made it clear, though. And they made it clear by adopting whole cloth to HIPAA. And here's why. Just the exception. There is the limiting it to health insurance through the catch-all provision in subsection 4 puts them in the same position as limiting to not including life insurance, which we know was not in in 1998. So I hear the buzzer. May I just sort of just briefly conclude? I don't have anything else. Your Honors have already pointed out. Okay, so there are seven cases that are filed. I'll call them cookie-cutter cases. Five have been dismissed. Three have been dismissed with prejudice. Two have motion to dismiss pending. Plaintiff continues to fail to point to anyone that agrees with his interpretation. There's not a single court, legislator, regulator, legal commentator, or industry expert. And I'll just end as follows. If it really is that Illinois is going to be the first to do this, I respectfully suggest it must come in through the General Assembly and not be judicially created. And the Illinois Supreme Court gives us great guidance and a little bit of a funny phrase that legislatures don't put elephants into mouse holes. Plaintiff's position, respectfully, is putting a whole herd of elephants into those mouse holes. It is nowhere in this law. It's not a close call. I ask that this court affirm the trial court's dismissal. And thank you. Thank you. Mr. Shapiro, you may close. I just want to start with the policy argument. This court would not be legislating. This court is interpreting what the legislature did. And the list of courts he had, no Illinois appellate court has, besides not using reverse, Counsel, I want to correct you slightly. We're supposed to examine what the legislature did and interpret what its intent was. Correct, Your Honor. Thank you. I agree. As for the damages are $2,500 per incident, that's going to be expensive. Or genetic information is needed by life insurance companies. Those are questions for the legislature. The U.S. Supreme Court, I mean the U.S. The Illinois Supreme Court in Catherine v. White Castle made clear it is not for courts to address concerns of business interruption or potential exposure to damages awards that a statute provides. Here, to the extent issues of life insurance believe a different balance should be struck, that is a matter best addressed by the legislature. That's what they said in BIPA. And it applies here. The other issue, as Justice Hutchinson's question implied, legislative history in 1998 was correct. It didn't apply to life insurance until 2014 when there's silence. No one says it, but you can't judge from silence. Well, in fact, in 2014, we don't even have any legislation. There's a huge insurance lobby. We don't even have them jumping up and down because they feel that it is not going to be applicable. Yeah, but how the insurance industry feels about a law doesn't mean. And, again, what happened in 2014, yes, they adopted it from HIPAA. But if you look at the HIPAA clause, it says it does not say insure, and that was an intentional change by the legislature of the HIPAA that an insure, not a health insure, not a health policy. And then 20E comes along. If life insurance is not involved in Section 20, how is it that the legislature passes an amendment and adopts it that talks about an exception to Section 20 for life insurers specifically mentioned? That evidence overwhelms the fact that the intent of the legislature, as Your Honor said, which is what you're looking for, has to be whether they did it consciously without life insurance complaining, they pass this law, and this is the law, and this is their intent by the use of insure, by the fact that they didn't exclude any insure except long-term care insure, by the fact that in 20E they came back and referred to life insurers. The intent is overwhelming that Section 20B applies to life insurance, and you should fine, so fine, and reverse the trial court and remand it. And what I was going to say is that of all those other seven courts, as with the BIPA kind of legal history, there's federal courts, there's trial courts, and they might herd together, but I believe, and someone can correct me if I'm wrong, but I believe this is the first case. The only courts that matter in interpreting an Illinois statute aren't the federal court, and the trial court judge basically said, I don't have the last word here. It's going to be this court, you know, that it's going to be the first Illinois appellate court, appellate level court, to interpret the statute. And so, you know, I don't think there's any statutory construction from, you know, we encourage you to read all those decisions, but in these kind of cases, there tends to be sort of a judicial herd mentality, but it's not for this court to worry about that. You're going to look at the statute, and I'm sure you are, and I'm sure you're going to find it applies to life insurance. Thank you. Any questions? Thank you. We will take the case under advisement. The case number is 224, 2 meaning second district, 399.